BLAKE and others v. THE McNAB & HANLAN MANUF'G Co. and another.

SAME v. EATON and others.

(*Circuit Court, S. D. New York.*   February 15, 1881.)

1. RE-ISSUE No. 978—IMPROVEMENTS IN WATER-CLOSETS—VALIDITY—INFRINGEMENT.

   Re-issued letters patent No. 978, granted William S. Carr, June 12, 1860, and extended seven years from August 5, 1870, for improvements in water-closets, *held valid* as to its *third* claim, and *infringed* as to such claim.

2. PATENT No. 21,734 — IMPROVED WATER-CLOSET — VALIDITY — INFRINGEMENT.

   Letters patent No. 21,734, granted Frederick H. Bartholomew, October 12, 1858, and extended for seven years from October 12, 1872, for an improved water-closet, *held valid* as to its *first* claim, and *infringed* as to such claim.

In Equity.

*C. F. Blake*, for plaintiffs

*S. S. Boyd*, for defendants.

BLATCHFORD, C. J.   This suit, as presented, involves two patents.   One is a re-issue, No. 978, granted to William S. Carr, as inventor, June 12, 1860, for "improvements in water closets;" the original patent having been granted to him August 5, 1856, and the re-issue having been extended for seven years from August 5, 1870.   Infringement of the third claim only of the re-issue is alleged.   The specification of the re-issue says:

" The nature of my said invention consists in a peculiar construction of cock, which is opened by the motion of the seat of the water-closet, and allows but little water to run into the pan of the closet until the weight is removed from the seat, when the cock, gradually closing of itself, allows the water to run for a limited and regulated time, sufficient to wash out the basin."

The third claim of the re-issue is as follows:

" In a valve for water-closets, a cup-leather for controlling the motion of said valve in closing gradually, substantially as specified; said cup-leather moving freely in one direction, and closing against the containing cylinder in the other direction, and the leakage of water in said cylinder allowing the movement of said cup-leather, as set forth."

The invention embodied in this claim is, in fact, a combination of a valve for a water-closet with a variable chamber, and with a cup-leather, in such manner that the valve is caused to close slowly, because the operation of the cup-leather, as a tight packing, prevents the passage of water, and is allowed to open rapidly, because the operation of the cup-leather as a valve permits the passage of water. The cup-leather thus acts in one direction as a valve, and in the opposite direction as a packing. The variable chamber or cavity or cylinder has in it a piston with a cup-leather on it centrally, and is provided with a small aperture which permits the gradual escape of water from it. When the cavity is filled with water the valve is held on its seat by a spiral spring. When the valve stem is depressed, the valve is opened rapidly, because the cup-leather then acts as a valve and permits the water to pass freely outside of it. When the force which depressed the valve stem is removed, the spring acts to shut the valve, but shuts it slowly, because the cup-leather acts as a tight packing, being forced by the pressure of the water outwards against the wall of the cavity. Therefore the water can escape only slowly from the cavity through the said small aperture, and the valve cannot move faster to shut than it is allowed to move by the escape of the water through said small aperture. The defendants' water-closet has a contrivance, the mode of operation of which is substantially the same as that of Carr. It has a variable chamber, a cup-leather which acts in one direction as a packing and in the opposite direction as a valve, and it has a small aperture in the variable chamber which permits a small flow of water therefrom while the valve is closing. The cup-leather controls the motion of the valve in closing gradually; it moves freely in one direction and closes against the wall of the containing chamber in the other direction, and the leakage of water in said chamber allows the movement of the cup-leather. There is, clearly, an infringement of the third claim, unless the particular arrangement of the aperture through which the water escapes from the variable chamber is an element of that claim.

In the specification of Carr's re-issue it is said that leakage at the washer through which the stem of the supply-cock passes will, in some cases, be adequate to make the closing of the valve sufficiently gradual, but that he proposes to use a screw entered through the cap of the chamber, with a head next said washer, and part of one side of the screw filed away, so as to adjust the amount of leakage. In the defendant's apparatus there is a small hole in the side of the chamber, near the end thereof, where the plunger enters, connecting, by a small enclosed channel, with the portion of the chamber beyond the cup-leather. The plunger and stem in the defendants' apparatus are no more than the stem in Carr's. The differences in the escape channels are formal and not substantial.

The defendants contend that the cup-leather of Carr does not control the motion of the valve in closing gradually, and that it simply acts as a packing, during the closing of the valve, to entirely prevent any closing, by preventing the water from passing from above. But the language of the claim, in connection with the descriptive part of the specification, is that the action of the cup-leather as a packing, and its gradual movement, permitted by the slow escape of the waste from above it, control the movement of the valve in closing gradually.

On the question of novelty, or as affecting the construction of the said third claim, the defendants adduce English letters patent No. 8,971, granted to George Hulme for "improvements in water-closets," the specification of which bears date November 27, 1841. But no witness for the defendant testifies to the existence in Hulme of what is found in the third claim of Carr. There is no cup-leather in Hulme. Hulme's device is one for keeping a valve open for any required length of time for the supply of water to the basin of the water-closet. He has a bucket with a central poppet-valve. In place of that the defendants use a cup-leather.

The defendants take the position that the central valve alone was old; that a cup-leather alone was old; that a poppet-valve, in combination with a cup-leather, was old; that

Hulme had a bucket or plunger with a central poppet-valve, and a means of regulating the escape of the water from above the plunger; that such means of escape in the defendants' apparatus is the same as in Hulme; and that, in view of these considerations, the third claim of the Carr re-issue must be limited to the special mode of escape shown by Carr. But, although the defendants use Hulme's mode of escape, they do not use his plunger with its poppet-valve, but use instead a cup-leather, and thus use Carr's combination. It is very clear that the cup-leather does not have the same mode of operation as the poppet-valve, and that the points of advantage in it must be just the reasons why the defendants use it, and do not use the poppet-valve arrangement of Hulme in connection with Hulme's mode of escape. Nor does it avail to show the prior existence in Kirkwood of a mode of regulating the supply of water by an arrangement for the gradual escape of the water from above the plunger, so long as the arrangement set forth in the third claim of the re-issue is not found in Kirkwood.

The other patent sued on is No. 21,734, granted to Frederick H. Bartholomew, October 12, 1858, for an "improved water-closet," and extended for seven years from October 12, 1872. The first claim of that patent is alleged to have been infringed. It is as follows:

" The use of a drip-box or leak-chamber arranged above the closet and below and around the supply-cock, substantially as described."

The specification says that—

"The nature of the invention consists in providing for water-closets a cistern or drip or leak-chamber, arranged upon the top of or over the tank of a closet, and placing a supply-cock within or above said drip-box or cistern, so that any waste or drip or leak from the cock shall be conducted into the trunk, so as to insure the keeping of the floor dry."

The drip-box is shown and described as arranged upon the the top plate of the closet by being cast upon the top plate, and as having the supply-cock within it; and it is set forth that any leakage about the cock will drop into the closet. The leakage from the joints of the supply-cock must fall into the drip-box, and thence into the trunk and the soil-pipe, and not fall on the floor. The defendants' apparatus has a trunk

and a supply-cock, and a drip-box arranged below and around the supply-cock, but the drip-box is cast upon the side of the trunk near its top, and not upon its top. The drip goes into the drip-box, and thence into the trunk and the soil-pipe. The question is whether the change of the position of the drip-box is formal or substantial.

It is contended, for the defendants,—

That it was not new to have a drip-box, or to have a pipe for conveying away drippings, in machinery, from a drip-box arranged in connection with a cock or a valve, or to have a drip-cup applied to the valve of a water-closet, the leakage from the valve falling into a saucer and thence finding its way, through a hole, into the inside of the trunk; that a valve on the floor at the foot of the trunk was old, and so was a valve attached to the trunk and below its top, and a valve above the top; that it was old to have, in connection with a valve, a drip-pan conducting the drip into the soil-pipe at the foot of the trunk, and also to have a valve on top of the trunk, and a provision, by means of a hollow arm, for conducting the drip into the trunk; and that, in view of all this, the first claim of the Bartholomew patent cannot be held to cover the defendants' drip-cup arrangement.

But the evidence of the plaintiffs' expert as to two water-closet drip arrangements, respecting which the defendants introduced testimony, namely, that of Kirkup and the Scotch closet of Nicoll & Harrison, shows that they were not like either Carr's or the defendants'. In the Turner & Madden arrangements the devices were on the floor and the drip ran into the soil-pipe below the trunk. No arrangement is shown, before Bartholomew, in the same place as his with reference to the other parts of the closet, and to the work it has to do, and to the supply-cock and to the drip it catches, and doing the same work, and catching the same drip, as his does and as the defendants' does. There is nothing in the state of the art which requires such a construction to be given to the words "above the closet" as will not make the defendants' drip-box substantially above the closet, although not cast on the cover but on the side, near the top. There is the same operation of the same parts, acting in combination with each other, and attaining the same result. This is the testimony of the plaintiffs' expert, and it is not contradicted. It must,

therefore, be held that the defendants have infringed the first claim of No. 21,734.

In a suit before Judge McKennan the validity of the two claims above considered was sustained; but, in deciding the case, no written opinion was given. In a suit in Missouri against Boisselier and Kupferle, involving the said claims and a closet like that of the defendants in these cases, the bill was dismissed, but on what grounds does not appear from the decision of the court. In regard to any supposed effect of the decree in that suit, as a bar in favor of the defendants in these suits, it is sufficient to say that no proceedings in that suit are set up in the answers in these suits.

There must be a decree for the plaintiffs as to the above claims, and for an account of profits and an ascertainment of damages, with costs.